UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CONWAY FOR SENATE                                                                    PLAINTIFF

v.                                                CIVIL ACTION NO. 3:12-CV-244-S

FEDERAL ELECTION COMMISSION                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Conway for Senate, the principal campaign committee for Jack Conway in his 2010 campaign for United States Senate, brought this action to challenge a civil monetary penalty assessed against it by Defendant Federal Election Commission ("FEC") for failing to file a required report. The parties have cross-moved for summary judgment (DNs 15 and 16). For the reasons stated herein, the FEC's motion for summary judgment will be granted.

**I.**

Pursuant to the Federal Election Campaign Act ("FECA"), a principal campaign committee for a candidate for the Senate must periodically file various reports, including quarterly reports. 2 U.S.C. § 434(a)(2)(iii). Those quarterly reports are due by the 15th day of the month following the calendar quarter, except that the report for the period ending December 31st (the "year-end report") must be filed by January 31st of the following year. *Id.* To file a report, a campaign committee for a senatorial candidate is required to send it to the Secretary of the Senate, who receives the reports as custodian for the FEC. 2 U.S.C. § 432(g)(1). The Secretary of the Senate must then forward a copy of the report to the FEC within 2 working days. 2 U.S.C. § 432(g)(2).

If a campaign committee fails to timely file reports, the FEC may assess civil penalties against the campaign committee. 2 U.S.C. § 437g(a)(4)(C)(i)(II). FEC regulations set forth a schedule of penalties that takes into account whether the report was not filed or was merely late, how late the report was, the dollar amount of activity in the report, and whether the report was one that is deemed "election sensitive." 11 C.F.R. § 111.43(a)-(c). FEC regulations also detail that reports that are not election sensitive are deemed late if filed after their due dates but within thirty days of the due dates; after that, the reports are considered to be not filed. 11 C.F.R. 111.43(e)(1).

**II.**

In December of 2010, the FEC sent a notice to Conway for Senate stating that its year-end report was due on January 31, 2011. On January 25, 2011, Conway for Senate sent an envelope containing various reports via FedEx Priority Overnight to the Senate Office of Public Records. According to Conway for Senate, the year-end report was one of the reports in that envelope. The FEC, however, states that it did not receive the year-end report in that envelope.

On February 17, 2011, the FEC sent a notice to R. Wayne Stratton, Conway for Senate's Treasurer, stating that the year-end report had not been filed. On March 10, 2011, Stratton sent a letter to the Senate Office of Public Records protesting that the campaign committee had sent a copy of the year-end report in the January 25, 2011 FedEx shipment. Stratton included with the letter a copy of the year-end report.[1]

In a March 30, 2011 memorandum, the FEC's staff recommended that the FEC find "reason to believe" that a civil penalty of $4,950 should be imposed upon Conway for Senate for having not

---

[1] Conway for Senate explains that the three-week difference between when the FEC sent the notice of non-filing and when Stratton responded was caused by the fact that the FEC's notice was sent to a P.O. box that the campaign committee had stopped using. Conway for Senate states that Stratton received the FEC's notice at his office on March 10, 2011, and responded immediately.

filed the year-end report.[2] The FEC unanimously approved that recommendation on April 1, 2011. On April 4, 2011, the FEC sent Stratton a letter informing him of the reason-to-believe finding, explaining the basis for the imposition of the civil penalty, and explaining how Conway for Senate could challenge the penalty.

By letter dated May 4, 2011, Conway for Senate challenged the imposition of the penalty. Attached to the letter was an affidavit from Lynn-Marie Johnson, a receptionist at Stratton's accounting firm, stating that she had placed the year-end report, along with other items, in the January 25, 2011 FedEx shipment.

Dayna Brown, a Reviewing Officer in the FEC's Office of Administrative Review, acknowledged receipt of the challenge. Brown contacted the Superintendent of the Office of Public Records of the Senate and asked that the Office of Public Records to review its records to determine whether it had received Conway for Senate's 2010 year-end report in January of 2011. The Superintendent of the Office of Public Records responded to Brown via letter. The letter stated that the Office of Public Records had reviewed "the original documents and the original Fedex envelope shipped on January 25, 2011." The letter continued, "As reflected in our public database, the original documents confirmed that our office received 5 separate reports in the Fedex envelope shipped on January 25, 2011." After identifying the five reports that had been received, the letter stated that the Office of Public Records did not receive the 2010 year-end report in that January 25, 2011 envelope.

On June 29, 2011, Brown completed a preliminary recommendation that the FEC make a final determination that Conway violated 2 U.S.C. § 434(a) and assess a civil penalty of § 4,950. In

---

[2] The FEC noted that it received a copy of the report on March 10, 2011. However, as that report was received more than 30 days after the January 31 due date, the report was deemed not filed. *See* 11 C.F.R. 111.43(e)(1).

her recommendation, Brown noted the results of her correspondence with the Superintendent of the Office of Public Records. Brown further noted that a written record of a telephone call between Stratton and an FEC Analyst indicated that Stratton had told the FEC Analyst that the year-end report was sent on January 25, 2011, but separately from the other documents – a statement that was inconsistent with Johnson's statement in her affidavit that she placed the year-end report in the same FedEx envelope as the other documents received by the FEC.

Brown mailed a copy of her preliminary recommendation to Stratton. In turn, Stratton submitted a letter responding to Brown's recommendation. In his letter, Stratton denied ever having stated that the year-end report was sent separately from the other Conway for Senate reports that the FEC had received. Stratton further sought to describe the campaign committee's report preparation process. He noted that campaign employee Nick Braden prepared the reports and e-mailed them to Stratton and a law firm for review. Braden then made any necessary corrections and e-mailed finalized copies to Stratton for Stratton's signature. Then, Paula Pasley, the Office Administrator at Stratton's accounting firm, printed the reports from Braden's e-mail and assembled them for Stratton's signature. As evidence of that process, Stratton attached to his letter various pieces of evidence. In particular, he attached an e-mail dated January 24, 2011 from Braden to Stratton and Pasley that indicated that the "Q4 report" was in a file attached to the e-mail. Stratton also attached an affidavit of Pasley stating that Braden had e-mailed her several reports, including the 2010 fourth quarter report, which she printed out, had Stratton review, and then turned over to Johnson for mailing. Pasley's affidavit also stated that she had spoken to Raymond Davis of the Office of Public Records, who had indicated that it was "possible" that the Senate Sergeant-at-Arms, who was responsible for opening the envelope sent by Conway for Senate and then forwarding it to the Office

of Public Records, had failed to put the year-end report back in the envelope before he forwarded it. Finally, Stratton attached to his letter a copy of the previously-submitted affidavit of Johnson in which she stated that she had placed multiple reports, including the year-end report, in a FedEx envelope that was mailed on January 25, 2011 and delivered the following day.

On March 28, 2012, after having reviewed Stratton's letter, Brown issued a final recommendation to the FEC. Brown essentially credited the Office of Public Records' letter stating that it did not receive the year-end report in the January 25, 2011 mailing. Brown also addressed Pasley's suggestion that the Senate Sergeant-at-Arms might have lost the report. Brown stated that she had spoken with Davis, the Office of Public Records employee to whom Pasley had spoken. Davis told Brown that after he spoke with Conway for Senate staff, he contacted the Senate Sergeant-at-Arms. The Sergeant-at-Arms stated that, "as is their process," all documents that were in Conway for Senate's envelope had been forwarded to the Office of Public Records.

On April 9, 2012, the FEC, with one member not voting, unanimously adopted Brown's recommendation and assessed a civil penalty of $4,950. Conway for Senate then filed this suit. The parties have now cross-moved for summary judgment, both relying on the administrative record.

**III.**

A.

To prevail on a motion for summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is sufficient evidence on which a jury could reasonably find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-

moving party, but that party must present sufficient probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). Finally, the evidence must be construed in the light most favorable to the non-moving party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

B.

There is no dispute between the parties that the correct standard of judicial review of this action is that set out section 706 of the Administrative Procedure Act. Of relevance to Conway for Senate's arguments here, a reviewing court may overturn an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006). However, a reviewing court may not create a rational basis for the agency action that the agency did not itself proffer. *Id.*

Here, the court cannot conclude that Conway for Senate has shown the FEC's action to be arbitrary and capricious. The only real dispute between the parties is whether Conway for Senate included the year-end report in the FedEx package of reports it mailed on January 25, 2011. In finding that the year-end report was not included in that package, the FEC essentially credited the letter from the Superintendent of the Office of Public Records. That letter confirmed that the Office of Public Records had conducted a review of its records, including examining the "original Fedex envelope shipped on January 25, 2011" and the "original documents" therein. That review revealed, consistent with the Office of Public Records' database, that there were five documents in the envelope, but none of them were the year-end report. Given that the Office of Public Records

undertook a review of the original documents it received and determined that the year-end report was not one of them, the FEC's determination, based on that review, that Conway for Senate did not include the year-end report in the mailing was not "arbitrary" or "capricious."

The evidence submitted by Conway for Senate does not compel a finding that the FEC acted arbitrarily or capriciously. Brown, the FEC's Reviewing Officer, acknowledged in her recommendations each piece of evidence submitted by Conway for Senate. Thus, it cannot be said that the agency failed to examine relevant evidence. Instead, the agency simply concluded that the evidence that the year-end report was not in the January 25 FedEx package was stronger than Conway for Senate's evidence that it was. Nor can that factual determination be considered arbitrary and capricious. Simply put, the evidence submitted by Conway for Senate was not compelling enough for the court to reach a conclusion that the FEC's determination was arbitrary and capricious. Conway for Senate itself states that this case is "a proverbial he-said, he-said" (Pl's Resp. to Def's. Mot. for Summ. J. and Reply in Support of Pl's. Mot. for Summ. J., DN 18, at 5) where both parties' factual arguments are equally plausible (*see id.* at 6). This court does not review the FEC's determination to see whether it could just as plausibly have made another determination; it reviews only for whether the FEC acted arbitrarily and capriciously in making its determination. Where an agency gives consideration to all relevant evidence and then makes one of two equally plausible factual determinations, the agency has not acted arbitrarily or capriciously.

Conway for Senate likens this case to *Greenwood for Congress, Inc. v. Federal Election Commission*, 2003 WL 22096125 (E.D.Pa. Aug. 15, 2003). In *Greenwood*, a campaign committee had sent a package to the FEC. 2003 WL 22096125, at *1. Inside was a cover letter stating that a hard copy of a report and a zip disk with an electronic copy were enclosed within the package. *Id.*

However, according to the FEC, only the hard copy of the report was in the package, not the zip disk. *Id.* The FEC notified the campaign committee that an electronic copy was not included in the package. *Id.* The campaign committee sent another electronic copy, which arrived at the FEC eight days after it was due. *Id.* The FEC subsequently determined that the campaign committee had failed to timely file the report and assessed a fine. *Id.* at *2.

The campaign committee administratively challenged the FEC's determination. *Greenwood*, 2003 WL 22096125, at *2. During the ensuing administrative review, the campaign committee submitted the following evidence: it had weighed the various items it submitted to the FEC. *Id.* Including the zip disk, the items would have weighed approximately 2 1/8 pounds, while the items weighed only 1 7/8 pounds without the zip disk. *Id.* The air bill for the package received by the FEC, which had been completed by campaign staff, indicated a weight of 2.20 pounds. *Id.* FedEx listed the weight of the package as 3 pounds, which, because FedEx rounded up to the next pound, indicated that the package was between 2 and 3 pounds. *Id.* Based on that evidence, the campaign committee argued that the FEC contained a zip disk. *Id.* However, the FEC rejected that evidence, determined that it did not receive the zip disk, and assessed the penalty. *Id.* The campaign committee challenged the penalty in the district court. *Id.*

The district court found that the FEC's determination was arbitrary and capricious. *Greenwood*, 2003 WL 22096125, at *3-*4. In doing so, the district court stated that the record contained nothing to suggest that the FEC made any effort to determine whether the disk was in the package; the FEC simply noted the electronic report was not uploaded into their system until eight days past the due date. *Id.* at *3. Thus, stated the district court, it was only the FEC's "belief in the infallibility of their procedures and employees" that supported the FEC's conclusion that the disk

was not included in the initial package. *Id.* In contrast to the lack of evidence supporting the FEC's conclusion, the district court noted that the FEC "disregarded relevant, albeit circumstantial, evidence presented by" the campaign committee, namely that the campaign committee had weighed the various items it believed were in the FedEx package received by the FEC, and the weights indicated that the zip disk was included in the package. *Id.*

While there are some superficial similarities between this case and *Greenwood*, the differences doom Conway for Senate's arguments. First, the evidence submitted to the FEC by Conway for Senate was much weaker than that submitted to the FEC in *Greenwood*. The weight evidence in *Greenwood* was particularly strong evidence, unconnected to the vagaries of memory or preconceived notions of whether or not an item was placed in a package. Moreover, the weight evidence was subject to an easily replicable test, but the FEC made no attempt to repeat the test or explain why the results were not valid. *See Greenwood*, 2003 WL 22096125, at *3. Here, in contrast to those easily verifiable weight tests, the evidence submitted by Conway for Senate consisted of nothing more than statements by various campaign staff members stating that they had prepared the year-end report and placed it in an envelope. As noted above, even Conway for Senate recognizes that its evidence created nothing more than a "he-said, he-said" question for the FEC to decide.

Additionally, while the district court in *Greenwood* focused on the FEC's lack of evidence and failure to investigate the evidence that was submitted to it by the campaign in that case, here the FEC took reasonable steps to verify that it did not receive the report. It inquired of the Office of Public Records as to the receipt of the report, causing the Office of Public Records to examine the original envelope and documents it received. Further, when Conway for Senate speculated, based on Pasley's conversation with Raymond Davis, that the Senate Sergeant-at-Arms may have lost the

report, Brown called Davis to speak with him. Notably, Davis had apparently taken it upon himself to contact the Senate Sergeant-at-Arms after he spoke with campaign staff members about the possibility that the Sergeant-at-Arms lost the report, and the Sergeant-at-Arms had reassured him that all documents it received had been forwarded to the Office of Public Records. Simply put, it cannot be said that the FEC failed to investigate here in the same manner it did in *Greenwood*.

Conway for Senate also argues that the FEC's determination was arbitrary and capricious because it "fail[ed] to follow its own regulatory guidelines regarding the 'best efforts' defense." The best efforts defense is set forth in 2 U.S.C. § 432(i):

> When the treasurer of a political committee shows that best efforts have been used to obtain, maintain, and submit the information required by this Act for the political committee, any report or any records of such committee shall be considered in compliance with this Act.

FEC Regulations state that a campaign committee opposing a finding by the FEC that there was reason to believe the respondent failed to comply with the FECA may argue, inter alia, that:

> The respondent used best efforts to file in a timely manner in that:
>
> (i) The respondent was prevented from filing in a timely manner by reasonably unforeseen circumstances that were beyond the control of the respondent; and
>
> (ii) The respondent filed no later than 24 hours after the end of these circumstances.

11 C.F.R. § 111.35(b)(3).

However, in its submissions to the FEC during the administrative review process, Conway for Senate never cited the "best efforts" provision or made any argument sounding in the "best efforts" standard detailed in the FEC's regulation. Thus, Conway for Senate waived the argument. *Wilson Air Center, LLC v. F.A.A.*, 372 F.3d 807, 813 (6th Cir. 2004) ("[I]t is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency

involved."). Simply put, it would be unfair for this court to consider whether the FEC properly considered a defense that Conway for Senate never argued was applicable.[3]

## IV.

Because the FEC's decision was not arbitrary or capricious, the court will grant FEC's summary judgment motion and dismiss this action with prejudice. A separate order will be entered in accordance with this opinion.

August 19, 2013

Charles R. Simpson III, Senior Judge
United States District Court

---

[3] Even if the court were to consider Conway for Senate's "best efforts" argument, it would find it meritless. Initially, the court notes that Conway for Senate has consistently taken the position that, as a factual matter, it actually filed the report, not that it was prevented from doing so by something beyond its control. Thus, the "best efforts" provision would appear to be inapplicable in this case. The closest Conway for Senate comes to arguing that something beyond its control prevented it from filing the year-end report is its speculation that the Senate Sergeant-at-Arms lost the year-end report. However, that argument ignores that the FEC made a factual determination – which, as detailed in the main text, was not arbitrary and capricious – that the Senate Sergeant-at-Arms did not lose the report, but instead Conway for Senate failed to include the year-end report in the January 25, 2011 mailing. Given that the FEC determined, in essence, that it was Conway for Senate's negligence that caused the year-end report to not be filed, Conway for Senate can not make the factual showing necessary for the "best efforts" defense. *See* 11 C.F.R. § 111.35(b)(3), (d)(1) (negligence of campaign is not a circumstance in which the best efforts defense may apply).